IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

KEVON HOUSTON,

|  |  |  |
|---|---|---|
|  | Plaintiff, | OPINION AND ORDER |
| v. |  | 24-cv-112-wmc |

NICOLE BROWN and
LISA PAYNE,

Defendants.

---

Plaintiff Kevon Houston is representing himself while incarcerated by the Wisconsin Department of Corrections ("DOC"). This court previously granted him leave to proceed with a claim that defendants Nicole Brown and Lisa Payne violated his rights under the Eighth Amendment by failing to ensure that he received a low-bunk restriction for pain caused by bulging discs in his back. (Dkt. #9.) Defendants Brown and Payne have filed separate motions for summary judgment, arguing that Houston cannot prevail under 42 U.S.C. § 1983, because even viewing the evidence in a light most favorable to plaintiff, no reasonable jury could find that they violated his Eighth Amendment rights.[1] (Dkt. ##43, 47.) Because the failure to enter plaintiff's lower bunk restriction timely in the DOC's electronic record was, at most, a negligent act, rather than one of deliberate indifference, the court will grant defendants' motions for summary judgment.

---

[1] Defendant Payne also moves in the alternative for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). (Dkt. #47.) Because she is entitled to summary judgment, the court limits its analysis to the parties' arguments under Rule 56 and the evidence presented in support.

UNDISPUTED FACTS[2]

A. Background

Plaintiff Kevon Houston is presently confined at the Prairie du Chien Correctional Institution, while defendants Nicole Brown and Lisa Payne are employed by the DOC at New Lisbon Correctional Institution ("NLCI"), where Houston was previously confined. Defendant Brown is a registered nurse, who serves as the NLCI Health Services Manager ("HSM"), and defendant Payne is also a registered nurse at NLCI in the same Health Services Unit ("HSU").

On May 18, 2023, St. Agnes Hospital in Fond du Lac, Wisconsin, performed an MRI of Houston's lumbar spine, which identified a diffuse disc bulge with central disc protrusion at L5-S1, displacing the S1 nerve root posteriorly with mild spinal stenosis. (Houston Decl. (dkt. #57) at 3; Ex. 100 (dkt. #57-1).) At some point following that MRI, Houston was restricted to a lower bunk, but that restriction eventually expired. After Houston was later transferred to NLCI, he asked the NLCI Special Needs Committee to renew his low-bunk restriction. On November 14, 2023, Nurse Payne then gave Houston a temporary low-bunk restriction for 30 days, pending the Special Needs Committee's

---

[2] Unless otherwise indicated, the following facts are material and undisputed. The court has drawn these facts from the parties' proposed findings, as well as the underlying evidentiary record where appropriate, viewing those facts in a light most favorable to plaintiff, as well as drawing all reasonable inferences in his favor. *Sanders v. Moss*, 153 F.4th 557, 561 (7th Cir. 2025). However, plaintiff has not filed a response to the findings of fact proposed by defendant Brown as required by the court's procedures on summary judgment, which were provided to the parties at the preliminary pretrial conference. (Preliminary Pretrial Packet (dkt. #23) Summ. Judg. Proc., §§ I-II.) Because plaintiff has not put into dispute those facts, the court treats those facts as undisputed. (*Id.* § II(C)); *see also Hedrich v. Bd. of Regents of Univ. of Wisconsin Sys.*, 274 F.3d 1174, 1178 (7th Cir. 2011) (courts are to consider only evidence set forth in proposed finding of fact with proper citation).

decision. However, because this temporary lower-bunk restriction was not entered into institutional records or disclosed to security personnel, Houston was *not* assigned a lower bunk as directed by defendant Payne. Worse, on the night of November 30, 2023, Houston then experienced back spasms and fell while climbing down from his assigned top bunk, sustaining an abrasion over one eye and a concussion. This lawsuit against HSM Brown and Nurse Payne followed.

### B. Institutional Procedures Regarding Medical Care

#### 1. Role of the HSM

As NLCI's HSM, Brown serves under the DOC's Bureau of Health Services Associate Director of Nursing, but is the administrative manager of NLCI's HSU. Her responsibilities at NLCI include management and supervision of health care services; developing policies and procedures; monitoring care plans; preparing required reports; and providing liaison assistance to other disciplines, institution units, and community health providers. Brown also supervises NLCI's nursing staff and completes random chart audits, but she is not required to track and check each order entered by nursing staff on a daily basis. She also does not supervise the physicians or other advanced care providers ("ACPs"), and she does not typically evaluate, diagnose, or determine a course of treatment for inmates. Rather, the majority of her time is spent conducting the administrative duties of an HSM.

### 2.  Health Services Requests

When a DOC inmate has a medical concern and wishes to communicate with medical staff or be seen in the HSU, he must fill out a Health Service Request ("HSR") form.[3]  The HSRs are triaged by nursing staff in the HSU, who use their training and judgment to prioritize appointments and inmate needs.  Even though an HSR may be directed to a specific staff member, it is always triaged in the same manner for patient care and safety, although an HSR placed in a pile for a certain staff member may contain a request for emergent care that cannot wait.  In most cases, HSM Brown is not aware of HSRs unless they are specifically forwarded to her.  In those cases, the triage nurse will note "refer to HSU Manager" in the HSR response, which will then be signed by the HSM.

### 3.  Low-Bunk Restrictions

DOC uses the Wisconsin Integrated Corrections System ("WICS"), which is an electronic platform for inmate records, including offense details, housing, movement, inmate banking, conduct reports, incident reports, and restrictions.  WICS also contains each inmate's "Special Handling Summary," which includes information about an inmate's housing recommendations (*i.e.*, special placement needs, etc.); ADA accommodations; and medical restrictions.  DOC Staff have different levels of access in WICS; however, all security staff have access to the Special Handling Summary.

---

[3] Sometimes inmates will use interview/information request forms instead of HSR forms, but HSU processes interview/information requests in the same way as HSRs.

DOC's Division of Adult Institutions also has a special needs policy in place to guide the provision of medically indicated restrictions. (*See* Ex. 1001 to Brown Decl., DAI Policy #500.30.07 (dkt. #46-2).)  The Special Needs Committee is a multi-disciplinary committee at each facility that reviews requests for special medical needs, restrictions, and adaptations.  HSU staff are permitted to grant temporary special needs restrictions for up to 90 days without waiting for approval from the Special Needs Committee.  However, continuation of a medical restriction for an extended period of more than 90 days requires Special Needs Committee approval.

When an inmate requests a special medical needs restriction or accommodation, a special needs evaluation appointment is scheduled with HSU staff who see the patient to determine if the request is appropriate for review by the Special Needs Committee.  If the request is appropriate for Special Needs Committee review, a DOC-3332D "Functional Observation" form may be sent to the inmate's housing unit for security personnel to complete and return it to the HSU.  This form is designed to provide a more compete picture of how an inmate functions in their daily activities on their housing unit, since HSU staff only see inmate patients for a limited time and in a limited capacity.

If HSU staff find adequate medical documentation of a need for a medical restriction or accommodation based on their assessment and review of the functional observations made by security staff, HSU staff will then forward the inmate's request to the Special Needs Committee for their review.  Once all information is gathered, the Special Needs Committee determines if the inmate's request is both allowable and supported under the special needs criteria for greater than 90 days up to one year.  When

a medical restriction order is placed, modified, or discontinued in the electronic medical record, the system automatically prints an order sheet in the HSU.  The nursing staff who enter the orders are responsible for collecting these printed order sheets, notifying the housing units, and updating WICS with new restrictions.

Unless she entered the restriction herself, DOC policy does not require HSM Brown to ensure that a specific restriction is properly entered into WICS or reported to security. Rather, each nurse typically is expected to take care to enter their own orders throughout the day.  Further, when a patient is transferred from one DOC facility to another, any current special needs restrictions remain in effect until the health care record is reviewed by HSU at the new institution.  Finally, inmates themselves are responsible for requesting a review or renewal of their restrictions before the expiration date.

### C. Plaintiff's Bunk Assignments

Although Houston had one previously, his most recent low-bunk restriction before transfer to NLCI had expired in June 2023, so when Houston transferred to NLCI from Kettle Moraine Correctional Institution on October 5, 2023, he did not have a low-bunk restriction.

On the same day he arrived at NLCI, however, Houston submitted an HSR stating, "I just got here and I would like to discuss medical restrictions, [etc.] please."  On October 6, 2023, Nurse Valerius responded to Houston's HSR by writing as follows:

> Back brace restriction effective until 3-30-24. TENS unit order/restriction is good until 9-22-24. Is there a specific restriction or medical issue for scheduling purposes that you would like to discuss?

Next, on November 11, 2023, Houston submitted another HSR stating,

6

> I came from KMCI Oct 7th[.] I was told my bottom bunk needed to be renewed. I wrote to HSU & talked to staff but haven't been notified of anything. I have severe back pain and it hurts to climb up & down and am I on the list for a tens unit?"

On November 13, 2023, Nurse Valerius responded to Houston's HSR by writing,

> TENS unit was ordered 8-21-23 and is good for 1 year. Will forward to PT so one can be issued to you. Low bunk expired in June. Special Needs Committee review & evaluation by nursing required. Copay will apply.

Nurse Valerius also referred Houston's HSR to physical therapy and scheduled him for a nursing sick call appointment the following day.

On November 14, 2023, Nurse Payne conducted a special needs evaluation for Houston regarding his need for a low-bunk restriction as well. (Brown Decl. Ex. 1002 (dkt. #46-3) at 53).) After Houston indicated that he had "constant" back pain, Payne noted on the "Special Needs Evaluation Low Bunk Low Tier" form that further records were needed -- specifically, she noted a "NEED" for his MRI results. (*Id.*) Nurse Payne further noted, "↓ Bunk 1 month for SNC decision," (*id.*), which HSM Brown interpreted to mean that Nurse Brown was planning on entering a low-bunk restriction for one month pending the Special Needs Committee's decision on Houston's request. However, the restriction was not entered into WICS or reported to security staff in Houston's housing unit, and so he remained in an upper bunk.

On November 15, 2023, Sergeant Bates completed a DOC-3332D Functional Observation form based on Houston's ability to function in his housing unit, noting that he had complained of pain related to climbing up to the upper bunk and had reported having a lower bunk at previous institutions. (Brown Decl. Ex. 1002 (dkt. #46-3) at 52.)

Still, Sergeant Bates noted that Houston was able to complete activities independently, such as bathing, dressing, hygiene, using the restroom, cleaning, climbing stairs, and walking steadily both on and off his housing unit.  (*Id*.)  Sergeant Bates further noted that Houston had no obvious signs of pain.  (*Id*.)

On November 19, 2023, Houston submitted another HSR, complaining of ongoing back pain and noting that he had not yet received his TENS unit, although he made no mention of his bunk assignment.  The following day, Nurse Valerius responded in writing that his TENS unit request had been forwarded to physical therapy and that he was scheduled for a sick call appointment with a nurse.  Houston was then seen by Nurse Maryah Martin.  Houston reported that his back pain was a "5/10" on a bad day.  In response, Nurse Martin educated Houston on the benefits of stretching, ice compression, use of over-the-counter medication, and traction to assist with his disc bulge.  There is also no indication in Nurse Martin's note that Houston mentioned or requested a low-bunk restriction during this appointment.

Overnight on November 30, 2023, however, the on-call nurse at the time, Nurse Frisk, received notice that Houston had fallen while climbing down the ladder of his upper bunk and had hit his head.  Houston was then sent to the local emergency room via state van, where he underwent a head CT scan, which did not show any acute intracranial hemorrhage or acute skull fracture, although a superficial abrasion to his right eyebrow was noted that did not require closure.  Eventually, Houston was diagnosed with a concussion and discharged back to the institution.

After Houston returned to NLCI from the emergency room, a 30-day low bunk restriction was entered into his Special Handling Summary because he had suffered a concussion, which would be considered an acute injury. That same day, however, the Special Needs Committee denied Houston's request for an extended low-bunk restriction, stating that his request did not meet the criteria as defined in the Special Needs policy.

Under the Special Needs policy, inmate patients may be granted a low-bunk restriction if they have a medical condition that significantly impairs vision, mobility, balance, cognition, agility or strength. (Ex. 1001 to Brown Decl., DAI Policy #500.30.07 Appendix 1 (dkt. #46-2) at 10.) More specifically, if such a condition represents "an imminent fall hazard," the inmate may not be placed in an upper bunk. (*Id*. at 10-11.) Otherwise, the policy dictates that an inmate should be restricted from the upper bunk only "if they have a medical condition that represents a *higher than average* [*likelihood*] of severe injury if that person fell from the upper bunk or if there is an *uncontrolled* medical condition that places them at increased risk of a sudden unpredictable loss of mobility, balance or cognition." (*Id*. at 11 (emphasis in original).)

As noted above, the Special Needs Committee reviews functionality in addition to evaluations by HSU staff. According to Houston's functional assessment, he was able to perform his normal daily activities without a serious limitation and did not represent a higher risk than average of falling from the top bunk. Further, his back condition -- a mild disc bulge at L5-S1 -- did not meet the criteria as a medical condition that would significantly impair his ability to climb into a top bunk. Thus, Houston's 30-day low bunk restriction was only honored from November 30 to December 30, 2023, due to his acute

injury, but was not approved for an extended low-bunk restriction by the Special Needs Committee. HSM Brown was a member of the Special Needs Committee that denied Houston's extended low-bunk restriction, but she does not recall the underlying reasons for that decision due to the passage of time.

On December 3, 2023, Houston next submitted an "interview/information request" addressed to HSM Brown, writing in part: "I was granted [a] bottom bunk restriction for a period of time yet I was never moved nor was anything done until my back gave out and I hit my head." There is no indication that HSM Brown saw or responded to this letter, as it was triaged by Nurse Frisk. Specifically, on December 4, 2023, Nurse Frisk responded to Houston's letter as follows:

> You have a neurosurgery consult ordered & scheduled. You had a special needs assessment done 11/14/23. The Committee denied that 11/30/23. You temporarily have low bunk until 12/30/23 from your concussion. You were given a back brace 3/30/23. TENS unit issued 10/3/23 per EMR chart.

Houston was seen during these follow-up appointments. Moreover, his neurological checks were normal, and he verbalized no visual concerns. On December 11, 2023, Houston was also seen by Advanced Practice Nurse Prescriber ("APNP") Hadassa Legrand for an emergency room follow-up. Houston reported a mild headache that improved with Tylenol and ibuprofen, as needed, and APNP Legrand extended his Tylenol and ibuprofen prescriptions, while advising Houston that he should contact HSU with any new or worsening neurological symptoms. However, APNP Legrand did not make any recommendation for Houston to receive an extended low-bunk restriction.

OPINION

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If the moving party meets this burden, the nonmovant "must go beyond the pleadings (*e.g.*, produce affidavits, depositions, answers to interrogatories, or admissions on file) to demonstrate that there is evidence upon which a jury could properly proceed to [reach] a verdict in [his] favor." *Burton v. Kohn Law Firm, S.C.*, 934 F.3d 572, 579 (7th Cir. 2019) (citation and internal quotation marks omitted).

Although *pro se* litigants are entitled to liberal construction of their pleadings, they too have the burden to come forward in response to a motion for summary judgment with evidence that demonstrates a genuine issue of material fact. *Arnett v. Webster*, 658 F.3d 742, 760 (7th Cir. 2011) ("[A plaintiff's] pro se status doesn't alleviate his burden on summary judgment.") (citation omitted). Further, while the court views the record "in the light most favorable to the nonmovant and constru[es] all reasonable inferences from the evidence in his favor," *Moore v. Western Ill. Corr. Ctr.*, 89 F.4th 582, 590 (7th Cir. 2023), a nonmovant is only entitled to favorable inferences that are supported by admissible evidence, not those based upon mere speculation or conjecture, *Grant v. Trustees of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017), or upon "[c]onclusory statements, not grounded in specific facts," *Bordelon v. Bd. of Educ. of the City of Chicago*, 811 F.3d 984, 989 (7th Cir. 2016).

11

Plaintiff filed this lawsuit against defendants Brown and Payne under 42 U.S.C. § 1983, claiming that they violated is rights under the Eighth Amendment by failing to ensure that security personnel knew he had a temporary low-bunk restriction in place for medical reasons before the night of November 30, 2023, when he was injured while climbing from the top bunk. Prison officials violate the Eighth Amendment's prohibition on cruel and unusual punishment if they act with "deliberate indifference" to prisoners' serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). However, "[t]he burden is on the prisoner to demonstrate that prison officials violated the Eighth Amendment, and that burden is a heavy one." *Pyles v. Fahim*, 771 F.3d 403, 408-09 (7th Cir. 2014). Specifically, to prevail on a claim under the Eighth Amendment, a prisoner is required to show that: (1) he had an objectively serious medical condition; and (2) defendants acted with deliberate indifference to that condition. *Clemons v. Wexford Health Sources, Inc.*, 106 F.4th 628, 635 (7th Cir. 2024).

An objectively serious medical condition is one that a doctor recognizes as needing treatment or one for which the necessity of treatment would be obvious to a lay person, *Pyles*, 771 F.3d at 412, and defendants accept that the bulging discs in plaintiff's back could be considered such a condition. Moreover, if a prisoner has a medical need for accommodations -- such as a lower bunk restriction -- failing to provide for those restrictions can violate the Eighth Amendment. *See Seymour v. Kostchyz*, No. 22-cv-170-jdp, 2022 WL 20328157, at *2 (W.D. Wis. Aug. 19, 2022) (citing *Klein v. O'Donnell*, No. 19-cv-887-bbc, 2019 WL 11786778, at *3 (W.D. Wis. Dec. 30, 2019); *Verrier v. Murphy*, No.

19-cv-1812, 2020 WL 1975168, at *6 (E.D. Wis. Apr. 24, 2020)).  Therefore, plaintiff satisfies the first requirement for an Eighth Amendment claim.

However, the second element plaintiff must prove to establish an Eighth Amendment violation relates to the official's subjective state of mind.  *Perez v. Fenoglio*, 792 F.3d 768, 776-77 (7th Cir. 2015); *Arnett*, 658 F.3d at 750.  A prison official acts with requisite deliberate indifference when he or she "realizes that a substantial risk of serious harm to a prisoner exists, but then disregards that risk."  *Perez*, 792 F.3d at 776 (citing *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)).  Stated another way, a prison official acts with the requisite deliberate indifference only if the official "*actually* knew of and disregarded a substantial risk of harm."  *Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (emphasis in original); *see also Tackett v. Dauss*, 132 F.4th 1026, 1030 (7th Cir. 2025) ("the official must have actually known of and consciously disregarded a substantial risk of harm").  Even if a prison official failed to alleviate a significant risk of harm that he or she should have perceived, there is no liability under the Eighth Amendment without actual knowledge and conscious disregard of the known risk.  *Brown v. Osmundson*, 38 F.4th 545, 550 (7th Cir. 2022) (citing *Farmer*, 511 U.S. at 838).

Deliberate indifference is "a high bar 'because it requires a showing [of] something approaching a total unconcern for the prisoner's welfare in the face of serious risks.'"  *Rasho v. Jeffreys*, 22 F.4th 703, 710 (7th Cir. 2022) (quoting *Rosario v. Brawn*, 670 F.3d 816, 821 (7th Cir. 2012)).  Ordinary negligence or even gross negligence is not enough to meet this high standard.  *Brown*, 38 F.4th at 550; *Vance v. Peters*, 97 F.3d 987, 992 (7th Cir. 1996).  Neither is medical malpractice.  *See Estelle*, 429 U.S. at 106 ("Medical malpractice does not

become a constitutional violation merely because the victim is a prisoner."). Unfortunately for plaintiff, he has been unable to offer evidence that would support a verdict of more than negligence, or even gross negligence, as to either of the two named defendants.

## I. HSM Brown

In particular, defendant Brown argues that as NLCI's HSM, her role was primarily limited to administrative tasks. As a result, she had *no* role in evaluating or treating Houston when he initially requested a low-bunk restriction. Brown also did not see whether or not Nurse Payne entered any order into the electronic medical record or WICS regarding a low-bunk restriction for Houston on November 14, 2023. Brown herself believes that this lack of entry was an inadvertent oversight at most. Contrary to plaintiff's assertion, Brown also confirms there is *no* requirement in DOC policy for the HSM to ensure that a restriction is entered into WICS or reported to security. To the contrary in this case, it is undisputed that Brown would only have had such a duty if *she* had personally imposed the restriction herself. Regardless, Brown had no involvement with the short-term low-bunk restriction issued by Nurse Payne on November 14 pending review by the Special Needs Committee.

To be held liable under 42 U.S.C. § 1983, a plaintiff must also prove the defendant's personal participation or direct responsibility for the alleged constitutional deprivation. *Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018) (citing *Wilson v. Warren Cnty.*, 830 F.3d 464, 469 (7th Cir. 2016)). Plaintiff similarly presents no evidence from which a reasonable jury could conclude that defendant Brown was personally involved in providing medical treatment nor that she had *any* involvement with respect to the temporary low-

14

bunk restriction that was issued, but not entered into, in his institutional record on November 14. *Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017).

Finally, although Brown held an administrative and supervisory role in the HSU, plaintiff cannot hold her vicariously liable for the actions of his treatment providers or insist that she perform the jobs of others. *See Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009) ("no prisoner is entitled to insist that one employee do another's job"). Because no reasonable jury could find that Brown acted with deliberate indifference to plaintiff's medical needs by failing to ensure that his low-bunk restriction was entered into WICS or provided to security personnel in plaintiff's housing unit, plaintiff does not establish a constitutional violation of the Eighth Amendment and Brown is entitled to summary judgment on plaintiff's claim against her.

## II.    Nurse Payne

The evidence shows that plaintiff's request for a low bunk was based on *pain* while climbing up and down the ladder to the top bunk, and not because of an imminent risk of falls. In fact, a functional evaluation of plaintiff shortly before his fall revealed no obvious signs of pain, and there is no evidence that climbing in and out of the top bunk posed a risk of further harm to plaintiff's back or that he faced a significant risk of falling from the top bunk. For this reason, the Special Needs Committee ultimately rejected plaintiff's request for an extended, low-bunk restriction based on back pain after being granted a lower bunk restriction temporarily by Nurse Payne on November 14. As for defendant Payne's argument that any alleged failure to enter plaintiff's temporary low-bunk restriction in WICS at most amounted to negligence, there is *no* evidence from which a

reasonable jury could find that she *intentionally* failed to enter his low-bunk restriction into WICS or to inform NLCI's security personnel of its existence. And as already noted. inadvertent error, mere negligence, or ordinary malpractice do not rise to the level of deliberate indifference under the Eighth Amendment. *Vance*, 97 F.3d at 992.

Based on this record, no reasonable jury could find that Nurse Payne acted with deliberate indifference to plaintiff's medical needs by failing to ensure that his low-bunk restriction was entered into WICS or brought to the attention of security personnel more promptly. Therefore, plaintiff does not establish a constitutional violation of the Eighth Amendment and Nurse Payne is entitled to summary judgment on plaintiff's claim against her.

## ORDER

IT IS ORDERED that:

1) Defendant Nicole Brown's motion for summary judgment (dkt. #43) is GRANTED.

2) Defendant Lisa Payne's alternative motion for summary judgment (dkt. #47) is GRANTED.

3) The clerk of court is directed to enter judgment in favor of defendants and close this case.

Entered this 17th day of February, 2026.

BY THE COURT:

/s/

_____

WILLIAM M. CONLEY
District Judge

16